# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DAVID GRAHAM,                          *

Plaintiff                              *

v                                      *          Civil Action No. ELH-18-221

TROOPER MICHAEL COX, #4760, *et al.*,  *

Defendants                             *
                                     ***

## MEMORANDUM OPINION

In this civil rights action, plaintiff David Graham complains that Maryland State Police Corporal Michael Cox, Sergeant Sean Harris, and former Sergeant Joshua Justice[1] used excessive force during his arrest on January 30, 2015, resulting in serious injury.  ECF 1 (Complaint); ECF 21 (supplement to the Complaint).  Defendants have filed a corrected "Motion to Dismiss Or, In The Alternative, Motion for Summary Judgment" (ECF 17), supported by a memorandum (ECF 17-1) (collectively, the "Motion") and several exhibits.  Plaintiff opposes the Motion (ECF 20; ECF 26) and defendants replied.  ECF 28.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall construe the Motion as one for summary judgment and grant it.

## I. Background

On January 14, 2019, I issued a Memorandum Opinion (ECF 34) and Order (ECF 35), ruling on various pending motions.  However, I did not rule on defendants' Motion (ECF 17).  To do so, I draw on the factual summary set forth in ECF 34, at 1-5:

### A. Plaintiff's Complaint

---

[1] I have gleaned the ranks of the defendants from ECF 17.  Justice is now a Special Agent with the FBI.  ECF 17-6 (Justice Declaration), ¶ 1

In his unsworn Complaint, plaintiff states that an individual named David Spratt identified him in a photo array conducted by law enforcement as part of an investigation into the January 27, 2015 burglary of Cooper's Market in Elkton, Maryland. ECF 1 at 5. On January 30, 2015, defendants, who were employees of the Maryland State Police, had information that "Plaintiff was operating a yellow Ford Mustang, Maryland Registration IAK6308." *Id.* At some point, defendants observed plaintiff driving the Mustang and pursued him. *Id.*

Plaintiff states that after "the pursuit was ended . . . Plaintiff surrendered, and complied with all orders of defendants, i.e. (hand in the air, etc.), yet at this time defendants collectively and violently yanked this passive Plaintiff from the vehicle." *Id.* at 6. After plaintiff was "forcibly and violently thrown to the pavement" and handcuffed, defendants pressed plaintiff to the ground "while others kicked, stomped Plaintiff in his face, head, back and other areas," despite plaintiff being "securely restrained" at the time and posing no threat of physical harm to defendants. *Id.* According to plaintiff, while he was handcuffed, defendants and other law enforcement officers who were present collectively "beat Plaintiff's ribs and stomach areas", "unnecessarily used Tasers on Plaintiff . . . until Plaintiff layed [sic] motionless on the pavement, while blood ran down his face", "beat Plaintiff with batons", and physically assaulted plaintiff with their hands and feet. *Id.* at 6-7. Plaintiff reports that, as a consequence of this attack, he experienced

> massive swelling to the left and right sides of his head, face, a broken nose, 2 swollen and closed black eyes, blood spotting in the whites of both eyes, a severed left ear lobe, busted lips, broken tooth, cuts, lacerations, and abrasions and avulsions, . . . stressed tension to the back of the neck, bruised body and back areas, and extreme pain and discomfort; . . . long term migraine headaches, neck and shoulder pain, inability to perform and complete short and long term noncomplicated tasks, suffers loss of memory, and has difficulty sleeping.

*Id.*

Although the Complaint does not attribute particular acts to any individual defendant, plaintiff subsequently filed an unsworn Motion to Amend (ECF 21), in which he states that, after his car came to a stop,

> Plaintiff raised both hands, and Sgt Justice came back and pulled my hands behind the back and cuffed me, then Sgt. Justice pulled me out of the car and Justice and Cpl Harris (who helped Justice handcuffed [sic] Plaintiff) [sic]; . . . After Justice and Harris handcuffed Plaintiff, Justice began kicking Plaintiff on the right side, and Harris began kicking Plaintiff on the left side of the face;

2

... Tfc. Cox beat Plaintiff with his stick, striking Plaintiff in the face, shoulder, and on the right side of the body."

*Id.* at 2. The Motion also attributes specific acts to particular officers who are not defendants. *Id.* at 3.

Plaintiff claims defendants' vicious use of force was excessive, "completely out of proportion to any legitimate needs," and employed with malicious and sadistic intent. *Id.* at 7. In particular, he believes that defendants conspired to physically assault him "in retaliation for an unrelated hit and run that involved unrelated events, and involving an unrelated law enforcement Officer MSP Trooper Spinner." *Id.* In support of this assertion, plaintiff reports that "MSP Troopers"[2] made post-attack statements such as "we got him for Spinner." *Id.*

**B. Defendants' Motion & Exhibits**

Defendants' Motion (ECF 17) is supported by an affidavit from each of the three defendants. ECF 17-4; ECF 17-5; ECF 17-6. Defendants' version of events differs significantly from the allegations in Graham's Complaint.

Each defendant avers that he was assigned to assist with the pursuit of plaintiff's vehicle after other law enforcement officers (who were not named as defendants) initiated the pursuit[.] ECF 17-4 at 2; ECF 17-5 at 2; ECF 17-6 at 2. Defendants believed that plaintiff "was wanted for several felony warrants" and were "informed that [plaintiff] always carries a handgun." *Id.* Plaintiff drove at high speeds and continued even after "his tires were punctured with stop sticks." ECF 17-4 at 3. Ultimately, the pursuit ended after plaintiff's car was boxed in by law enforcement vehicles and brought to a complete stop when plaintiff "us[ed] his vehicle to ram the rear of the vehicle [defendant Cox] was riding in at the time." *Id.* Cox, Harris, and Justice were all in the same vehicle, which Justice was driving. ECF 17-4 at 3.

After the passengers in plaintiff's car were moved to safety, Cox, who possessed a "duty weapon," "positioned [him]self by Graham. Graham had refused to exit the vehicle, and was on the ground at that point." *Id.* at 3-4. The three defendants and other officers "gave Graham verbal commands to put his hands behind his back for handcuffs. Graham failed to comply and actively resisted handcuffs by struggling to put his hands in his front waistband." ECF 17-4 at 4; ECF 17- 5 at 3; ECF 17-6 at 3.

Cox avers, ECF 17-4 at 4:

---

[2] Plaintiff does not specify whether the defendants are the "MSP Troopers" who made these comments.

A Cecil County Sheriff's Office deputy attempt[ed] to deploy a tazer, but it had no effect on Graham. Graham then grabbed for the deputy's tazer. . . . Due to Graham's active resistance and the concern that Graham was armed, [Cox] used [his] Monadnock Expandable Baton (MEB), attempting to jab [Graham's] right shoulder to prevent him reaching for his waistband. Graham's movements deflected this strike from his shoulder to his cheek. The blow did not seem to have any effect on Graham. [Cox] attempted strikes with [his] leg in Graham's shoulder/upper arm area.

Thereafter, the officers present were able to place Graham in handcuffs. *Id.* According to Cox, "Graham appeared to be on drugs at the time of his arrest" and was provided with "immediate medical attention" by a Maryland State Police medic before EMS arrived. *Id.* at 5.

Each of the three defendants avers that he did not possess a taser during the incident, nor did he (or any of the officers that he observed) use force after Graham was handcuffed. ECF 17-4 at 4; ECF 17-5 at 3; ECF 17-6 at 3. Further, each avers that "[t]he force employed was limited to what was necessary to apprehend and handcuff Graham." *Id.*

## C. Plaintiff's Response & Motion to Amend[3]

Plaintiff filed an opposition to the Motion, in which he reiterates his assertion that he offered no resistance once his vehicle was stopped and that law enforcement officers severely assaulted him after he was restrained. ECF 20 at 9-12. Although plaintiff details the various assaults he suffered and the resulting injuries, plaintiff speaks generally of "police" or unspecified "defendants" exerting the force, or he uses phrases in such a way as to remove any reference to the identity of the individual(s) committing the assault. *Id.* at 14-16.

---

[3] As explained in the Court Order dated August 15, 2018, both the first Response and the Motion to Amend contain indicia that plaintiff may have intended for the statements contained within to be sworn, but neither document contained a signed statement that it was made under penalty of perjury. ECF 25. Because plaintiff is pro se, the Court granted him "the opportunity to supplement these filings by signing a declaration under penalty of perjury as to the truth of the allegations they contain if he, in fact, intends to make these allegations under oath." *Id.* The Court expressly warned plaintiff that if he failed to do so within the 21-day period provided by the court those filings "SHALL BE treated as unsworn." *Id.* Plaintiff did not submit such declarations, and therefore the Court treats these filings as unsworn.

Plaintiff claims: "All defendants participated in the excessive use of force, along with defendants initially listed as 'Cecil County Sheriff Department, et. al.'" *Id.* at 15. However, no such defendant was identified in the Complaint. See ECF 1 at 4-5 (naming only Cox, Harris, and Justice, and purporting to "reserve[] the right to freely amend or add additional unknown defendants, that worked at the Cecil County Sheriff's Department" but never identifying any such individual or "John Doe" defendant).

Subsequently, plaintiff submitted a second response to the Motion. It largely contains statements of law concerning excessive force and qualified immunity and reiterates his allegations about the severity of his injuries. ECF 26.

In addition to the foregoing, defendants contend that ample probable cause supported the arrest of Mr. Graham. ECF 17-1 at 1. Moreover, they point out that Graham was charged, and ultimately pled guilty to, the offenses of reckless engangerment, possession of crack cocaine, and fleeing and eluding the police, arising from the incident of January 30, 2015. *See* ECF 17-3.

Graham filed responses in opposition to the Motion (ECF 20; ECF 26) and a Motion to Amend Complaint (ECF 21). *See also* note 3, *supra.* These submissions contained indications suggesting that he sought to swear to their contents under oath, but neither filing was made under penalty of perjury. In my Order of August 15, 2018 (ECF 25), I referenced the opposiiton (ECF 20), and the Motion to Amend (ECF 21), and said: "In view of his pro se status, the Court will allow Plaintiff the opportunity to supplement these filings by signing a declaration under penalty of perjury as to the truth of the allegations they contain if he, in fact, intends to makes these allegations under oath." *Id.* But, I cautioned Graham that, if he failed to do so within 21 days, the Court would treat the filings as unsworn. *Id.* Graham did nto respond to the Order. *See* Docket.

On September 11, 2018, defendants filed a Reply. ECF 28. They noted that Graham's period for compliance had expired, and they reiterated their request for summary judgment in their favor. *Id.* Graham did not respond to the Reply. *See* Docket.

Both the Order and the Reply were mailed to Graham's address of record as of the time of mailing (Roxbury Correctional Institution). Neither document was returned to the Court as undeliverable, nor is there any basis to conclude that Graham did not receive either of these documents.

Subsequently, Graham filed two notices of change of address. ECF 32; ECF 33. In ECF 32, docketed November 19, 2018, Graham stated that he was transferred to another facility on November 9, 2018.[4] The second notice was docketed on December 17, 2018. ECF 33. Unfortunately, the Clerk's Office did not correctly update the docket sheet in this case to reflect the changes of address. *See* ECF 36. Consequently, when the Court issued its Memorandum Opinion and Order of January 14, 2019 (ECF 34; ECF 35), in which I ruled on other motions, the Clerk sent it to the wrong address for Graham. *See* ECF 36. The mailing was returned to the Clerk on February 25, 2019. *Id.*

Of relevance, in the Memorandum Opinion and Order of January 14, 2019, I noted that Graham's submissions (ECF 20, ECF 21) were not made under oath. Therefore, I granted him, yet again, an additional period of time to file an affidavit in support of his opposition to ECF 17. *See* ECF 34 at 11; ECF 35, ¶ 4.[5]

---

[4] According to his notices of change of addres, Graham was transferred to Pennsylvania State Correctional Institution Camp Hill on November 9, 2018, and thereafter he was transferred to Pennsylvania State Correctional Institution Smithfield on December 10, 2018. ECF 32; ECF 33. However, the mailing address for both institutions is the same post office box in St. Petersburg, Florida maintained by Smart Communications. *Id.*; *see also Where to Send Your Stuff*, Pennsylvania Dep't of Corr., https://www.cor.pa.gov/family-and-friends/Pages/Where-to-Send-Your-Stuff.aspx (last visited March 29, 2019).

[5] This is not to suggest that the Court was *required* to extend the opportunity to Graham to supplement his filings.

As noted, the Memorandum Opinion and Order were returned to the Clerk on February 25, 2019, because plaintiff had been transferred to another institution. ECF 36. Therefore, by Order of March 6, 2019 (ECF 37), I directed the Clekr to resend ECF 34 and ECF 35 to Graham, at the correct address. And, I extended Graham's response time. ECF 36.

Unfortunately, yet another clerical error occurred in mailing ECF 34, ECF 35, and ECF 36. On March 28, 2019, the documents were returned to the Clerk as undeliverable. ECF 38. Apparently, this is because the Clerk omitted one digit from the address for the P.O. Box. *Id.*

## II. Standard of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does

not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[6]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the

---

[6] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'" (citation omitted)).

motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's

failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

As the Court explained in its Memorandum Opinion of January 14, 2019 (ECF 34), plaintiff's Motion to Amend his Complaint indicated that plaintiff believed discovery was necessary. Therefore, the Court treated that motion as the functional equivalent of a Rule 56(d) affidavit. ECF 34 at 10. Nonetheless, the Court concluded: "Plaintiff's unsworn motion for discovery fails to explain why, for specified reasons, he cannot present facts essential to justify his opposition, without needed discovery." *Id.* (internal quotation marks and brackets omitted).

The Court determined that plaintiff had not explained why other avenues of information, such as documents in his criminal case or publicly available court records, were insufficient to provide some of the information he sought. *Id.* at 10-11. Further, the Court noted that Graham's other claims were based on personal knowledge, meaning plaintiff could oppose defendants' Motion with an affidavit. Accordingly, I granted plaintiff the opportunity to file such an affidavit. *Id.* at 11; *see also* ECF 37 (resending opinion and order to Graham because of his change of address).

Unfortunately, as noted earlier, owing to a series of clerical errors, and through no fault of Graham, the Court's Memorandum Opinion and Order (ECF 34; ECF 35), and another Order (ECF 36) were sent to the wrong address, so Graham did not timely receive them. Nonetheless, and of

import here, in August 2018, the Court previously provided Graham with the opportunity to make his relevant factual allegations under oath. *See* ECF 25. Yet, he failed to do so. *See* Docket. In view of this critical fact, and considering the amount of time that the Motion has languished, I decline to delay further the resolution of this case. However, Graham shall have the opportunity to move for reopening of the case, as outlined, *infra*.

For the reasons stated in my Memorandum Opinion of January 14, 2019, I conclude that Graham has failed to articulate adequately why "for specified reasons, [he] cannot present facts essential to justify [his] opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45. Therefore, it is appropriate to construe defendants' Motion as one for summary judgment, as this will facilitate the resolution of this case. But, because of the clerical errors, as recounted earlier, Graham is advised that the Court will reevaluate this decision if, by April 29, 2019, he files a motion to that effect, supported by an affidavit as described in the Memorandum Opinion of January 14, 2019.[7]

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."). The

---

[7] This option is in addition to and not in lieu of the ordinary post-judgment filings available to civil litigants. *See* Fed. R. Civ. P. 59(e), 60(b).

Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). Fed. R. Civ. P. 56(c) provides:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact

The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness

credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). Moreover, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Therefore, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Notably, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id*. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the Court must also abide by the "affirmative obligation

13

of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."
*Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III. Discussion

#### A. Section 1983

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

14

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

## B. Official Capacity

The Complaint specifies that the suit is brought against defendants in both their official

and individual capacities. ECF 1 at 8. Plaintiff requests monetary damages and "injunctive relief as found warranted by the Court." ECF 1 at 8 (capitalization altered).

As the Supreme Court explained in *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978)) (citations omitted). Thus, official capacity claims are subject to the same immunities the employing entity itself enjoys, such as sovereign immunity under the Eleventh Amendment. *Graham*, 473 U.S. at 167; *accord Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Congress has not abrogated Eleventh Amendment immunity through § 1983. Indeed, § 1983 claims are not cognizable against states, state agencies, or state agents acting in their official capacities. *See Lee-Thomas v. Bd. of Educ.*, CBD-08-3327, 2010 WL 2365673, at *3 (D. Md. June 8, 2010) ("A state simply cannot be sued as a 'person' in a 1983 action.") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989)), *aff'd sub nom. Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012); *Hanifee v. Bd. of Educ.*, RDB-09-2381, 2010 WL 723772, at *5 (D. Md. Feb. 24, 2010) ("§ 1983 ... cannot be expanded by the states, and furthermore has never been amended by Congress to make it applicable to damages claims against the states or their agencies."). Moreover, the Maryland General Assembly has expressly declined to waive its sovereign immunity as to claims in federal court. *See* Md. Code, State Gov't § 12-103(2) (stating that the Maryland Tort Claims Act does not "waive any right or defense of the State or its units, officials, or employees in an action in a court of the United States ... including any defense that is

available under the 11th Amendment to the United States Constitution").

An exception to Eleventh Amendment immunity exists, permitting prospective injunctive relief to correct an ongoing violation, if the suit is brought against state officials in their official capacities. *See Ex parte Young*, 209 U.S. 123, 159-60. To determine if the exception applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Manion v. N.C. Med. Bd.*, 693 F. App'x 178, 180-81 (4th Cir. 2017) (citation omitted).

Although Graham states that he seeks "injunctive relief as found warranted by the Court," ECF 1 at 8 (capitalization altered), he has not identified the nature of or any details about the injunctive relief that he might desire. Moreover, he does not allege an *ongoing* violation of federal law. Accordingly, plaintiff's claims under 42 U.S.C. § 1983, asserted against defendants in their official capacity, are barred by the Eleventh Amendment.

**C. Excessive Force Claim**

Claims brought under 42 U.S.C. § 1983, alleging the use of excessive force in effectuating an arrest or other seizure, are governed by the Fourth Amendment's prohibition against "unreasonable" seizures. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). The Fourth Amendment guarantees, *inter alia*, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend IV. It is made applicable to the States through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). Section 1983 provides a damages remedy for violations of the Fourth Amendment. *See, e.g.*, *Wilson v. Layne*, 526 U.S. 603, 609 (1999) ("§ 1983 allow[s] a plaintiff to seek money damages from government officials who have violated his Fourth Amendment rights.").

The touchstone case with respect to claims of use of excessive force brought under 42 U.S.C. § 1983 is *Graham v. Connor*, 490 U.S. 386 (1989). In that case, the Supreme Court said, *id.* at 394: "Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen," then "it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Id.* (quoting U.S. CONST. amend. IV*). Therefore, the Court concluded that claims of "excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen" should be evaluated "under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 395.

"The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (citing *Graham*, 490 U.S. at 395). The "'question [is] whether the totality of the circumstances justified a particular sort of . . . seizure.'" *Jones*, 325 F.3d at 527-28 (alteration in original) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

Whether an officer has used excessive force is analyzed under an objective reasonableness standard. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). The question of reasonableness is "wholly objective . . . without regard to [an officer's] own subjective intent or motivation. Subjectively bad intentions on the part of the individual officer will not make a constitutional violation out of an otherwise reasonable seizure; nor will subjectively good intentions render an objectively unreasonable seizure constitutional." *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988) (internal citations omitted).

18

Reasonableness is analyzed by weighing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. at 8 (citation omitted). The determination is made "from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight. . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Graham*, 490 U.S. at 387 (internal quotation marks and citation omitted). Moreover, the Constitution "does not require police to gamble with their lives in the face of a serious threat of harm." *Elliot v. Leavitt*, 99 F.3d 640, 641 (4th Cir. 1996).

To determine the reasonableness of an officer's actions "'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (quoting *Graham*, 490 U.S. at 396). Notably, the officer's actions are examined "in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Graham*, 490 U.S. at 397; *accord Pegg v. Herrnberger*, 845 F.3d 112, 120 (4th Cir. 2017) ("'Subjective factors involving the officer's motives, intent, or propensities are not relevant.'") (quoting *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994)).

Several factors are pertinent to "the reasonableness calculus . . . ." *Holloman v. Markowski*, 661 Fed. App'x 797, 800 (4th Cir. 2016) (per curiam). These include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see also E.W. by and through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018).

"The extent of the plaintiff's injury is also a relevant consideration." *Jones*, 325 F.3d at 527. And, "[p]olice officers will not be absolved of liability merely because their conduct, however unreasonable, results in only *de minimis* injury." *Dolgos*, 884 F.3d at 185.

To be sure, "noncompliance with police directives and nonviolent physical resistance do not necessarily create 'a continuing threat to the officers' safety.'" *Estate of Ronald H. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 904 (4th Cir. 2016) (citation omitted). But, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.

The relevant factors are not "exclusive," and there could be other "objective circumstances potentially relevant to a determination of excessive force." *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466, 2473 (2015). Moreover, the court must consider "the proportionality of the force in light of all the circumstances.'" *Ray*, 781 F.3d at 101 (quoting *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005)).

(1) <u>Before Handcuffing</u>

As plaintiff's Complaint and the information contained within the Supplement offer competing versions of what occurred in the time before he was handcuffed, the Court will consider each version. However, as to both versions, plaintiff acknowledges that, immediately before his interaction with defendants, he led defendants and other law enforcement officers on a vehicle pursuit. ECF 1 at 5. He does not dispute defendants' statements that plaintiff drove at high speeds, continued after "his tires were punctured with stop sticks," and was only brought to a stop when his vehicle and defendants' vehicle collided. *See* ECF 17-4 at 3.

According to the Complaint, although plaintiff "surrendered, and complied with all

orders[,] . . . the "defendants collectively and violently yanked this passive Plaintiff from the vehicle." ECF 1 at 6. Plaintiff states that he was then "forcibly and violently thrown to the pavement" before being handcuffed, although he does not specify whether any of the defendants were responsible for this. *Id.* Aside from the subjective characterization of being "yanked" and "thrown to the pavement" in a violent manner, plaintiff does not offer additional detail about the acts, such as how they were effectuated, each defendant's specific role, or if any injuries resulted.[8]

Given the dearth of objective details in this portion of the Complaint, it is debatable whether plaintiff's claim of being handled "violently" and "forcibly" sufficiently states a claim of excessive force or is too vague. *Compare Mustafa v. Povero*, 2017 WL 4169339, at *8-9 (W.D.N.Y. Sept. 20, 2017) (finding that plaintiff's allegation that defendant "'violently' pulled Plaintiff's arms behind his back to handcuff him, and then 'violently' pushed him into the back of a police car" was "too conclusory to state a plausible claim" of excessive force during arrest); *Johnson v. Hazou*, 2017 WL 887162, at *10 (N.D. Ohio Feb. 13, 2017) ("[T]he court cannot find that excessive force was used to arrest [plaintiff]" based on complaint's allegations that plaintiff was "'forcefully grabbed' by the arm, and 'violently yanked' out of his car," when plaintiff refused to comply with officer orders), *report and recommendation adopted*, 2017 WL 879448 (N.D. Ohio Mar. 6, 2017); *Machie v. Manger*, 2010 WL 2132223, at *5 (D. Md. May 25, 2010) (rejecting excessive force claim that officer "violently grabbed and handcuffed" him, explaining that "[p]laintiff has not provided anything more than the conclusory allegation that the grab was 'violent' to support a claim that the officer's force here was excessive."); *with Jones v. Sutton*,

---

[8] Plaintiff reports numerous injuries, but does not attribute any of them to his being yanked and thrown to the ground.

2014 WL 3756325, at *3, 8 (M.D. Ala. July 30, 2014) (adopting recommendation of magistrate judge that plaintiff adequately stated a claim by alleging that defendants "violently pulled him from his vehicle and slammed him to the pavement" where there was disputed question over whether plaintiff led defendants on brief high speed chase or promptly pulled over).

However, even assuming that plaintiff's claim of being "violently" yanked from his vehicle onto the ground while offering no resistance is sufficiently specific to allege a prima facie excessive force claim, plaintiff's claim suffers from several additional problems. First, plaintiff fails to distinguish between the defendants. Judge Chasanow previously rejected a similar claim as conclusory. *See Calhoun v. Prince George's County, Md.*, DKC-12-2014, 2013 WL 3873224, *3 (D. Md. July 24, 2013) ("Plaintiff's factual allegations are far too conclusory to state an excessive force claim adequately. Plaintiff fails to explain any of the facts or circumstances surrounding the use of force against him. . . . He does not differentiate among the remaining three [defendant officers], but merely alleges that when he fled from Officer Lacombe, he was apprehended by all of them and 'beaten about the head, body, and limbs.' He mentions no implements (whether batons or fists were used) and does not describe the nature of the beating (by time or number of blows).").

Moreover, despite plaintiff's claim that he was compliant with the officers' orders in the seconds after stopping but before being removed from the vehicle, he fails to acknowledge the larger factual context—that he had just led multiple officers on a vehicle chase. Even if the officers did not use the most gentle means to effectuate the arrest, it is difficult to see how forcibly pulling plaintiff from the vehicle after a vehicle chase would be excessive, given the possibility of danger suggested by one who has led police on a vehicle chase and who might have been armed. *See*,

*e.g.*, ECF 17-6 (Justice Declaration), ¶ 2 (stating that he "was informed that [Graham] always carries a handgun"); *see also Dunn v. Matatall*, 549 F.3d 348, 354 (6th Cir. 2008) ("Evading a police officer cannot be dismissed as a minor traffic violation, and Dunn's conduct in fleeing gave the Officers reason to be especially suspicious of Dunn once he finally did pull over. . . . It would have been reasonable for the Officers to be apprehensive that Dunn may have a weapon in the car, that the passenger may have a weapon, or that the car may be used as a weapon.").

Of relevance here, plaintiff has not offered an affidavit or other evidence to controvert defendants' sworn statements, averring that plaintiff actively resisted arrest. ECF 17-4; ECF 17-5; ECF 17-6. And, he was given two specific opportunities to file such an affidavit. *See* ECF 25; ECF 34; *see also* Fed. R. Civ. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"); *Bouchat*, 346 F.3d at 525. Thus, plaintiff has not created a dispute of material fact sufficient to survive summary judgment.

In contrast to the allegations in the Complaint, stating that all three defendants "violently yanked" Graham from the vehicle, plaintiff's Supplement states that Justice, with the assistance of Harris, "pulled" Graham's "hands behind the back and cuffed [him], *then* Sgt Justice pulled [him] out of the car." ECF 21 at 2 (emphasis added). Thus, under plaintiff's version of the facts, as contained in the Supplement, the only force used prior to handcuffing was Justice pulling plaintiff's hands behind his back. Plaintiff does not contend there was anything excessive, violent, or painful about Justice's "pulling" of plaintiff's hands behind his back, an action which is common

23

to many arrests.  Thus, under either version of plaintiff's allegations about defendants' actions before plaintiff was handcuffed, defendants are entitled to summary judgment.

Defendant Cox acknowledges that he used his baton and feet against plaintiff prior to plaintiff being handcuffed.  *See* ECF 17-4 (Cox Declaration), ¶ 13.  Plaintiff's Complaint does not mention this conduct, however.  Plaintiff's Motion to Amend the Complaint states that Cox "beat Plaintiff with his stick," but plaintiff's allegation (discussed below) is that this occurred *after* he had been handcuffed.  ECF 21 at 2.  Therefore, the Court will not analyze Cox's conduct in the context of pre-handcuffing conduct.

(2) After Handcuffing

As for the remainder of the Complaint and Supplement, plaintiff alleges at length that he was viciously assaulted by defendants and other officers after he was restrained and handcuffed, and suffered serious injuries as a result.  ECF 1 at 6-8.  As noted in the preceding subsection, it is plaintiff's allegation that Cox hit him with the baton and kicked him after plaintiff was handcuffed.  ECF 21 at 2.  He also alleges that Justice and Harris kicked him in the face after he was handcuffed.  *Id.*

Each defendant denies, under oath, that he used any force against plaintiff, or that he observed others using force against plaintiff, after plaintiff was handcuffed.  ECF 17-4; ECF 17-5, 17-6.  Plaintiff offers no affidavits or other evidence with which to rebut these sworn statements.  *See* Fed. R. Civ. P. 56(c)(1)(A); *Bouchat*, 346 F.3d at 525.  Although Graham makes statements that appear to be based on his personal knowledge regarding each defendant's alleged use of force after plaintiff was handcuffed, *see* ECF 21 at 2, these statements were not made under oath, despite the fact that plaintiff was specifically provided with the opportunity to do so.  As plaintiff has

failed to offer any affidavit or other material to rebut defendants' sworn statements that they did not use force against plaintiff once he was handcuffed, defendants are entitled to summary judgment.

## IV.  Conclusion

Defendants' dispositive Motion, construed as a Motion for Summary Judgment, shall be granted.  As previously noted, because of the complications in mailing the January 14, 2019 Opinion and Order, the Court will reevaluate this decision if, within 28 days, he files a motion to that effect that is supported by an affidavit as described in the January 14, 2019 opinion.

A separate Order follows.


March  29, 2019                       _____/s/_____
Date                                    Ellen L. Hollander
                                      United States District Judge