IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID GRAHAM,                          *

    Plaintiff,                         *

v.                                     *          Civil Case No.: 18-cv-00221-JMC

COX, #4760, *et al.*,                  *

    Defendants.                        *

                                    *

    *    *    *    *    *    *    *    *    *    *    *    *    *    *

## **MEMORANDUM OPINION**

Plaintiff David Graham filed this civil rights action pursuant to 42 U.S.C. § 1983. (ECF Nos. 1; 21). Plaintiff contends that Maryland State Police Corporal Michael Cox, Sergeant Sean Harris, and former Sergeant Joshua Justice[1] (collectively, "Defendants") used excessive force while arresting Plaintiff on January 20, 2015, resulting in serious injury. *Id.* The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4. (ECF Nos. 54; 57).

Defendants filed the instant Motion to Compel, or in the Alternative, Motion to Dismiss ("Defendants' Motion"). (ECF No. 74). Plaintiff filed an Opposition, (ECF No. 80) and Defendants filed a Reply. (ECF No. 81). I stayed all deadlines upon resolution of Defendants' Motion. (ECF No. 79). The issues have been fully briefed and no hearing is necessary to resolve this motion. *See* Local Rule 105.6 (D. Md. 2018). For the reasons more fully explained below, Defendants' Motion to Compel, or in the Alternative, Motion to Dismiss (ECF No. 74) is **DENIED without prejudice**.

---

[1] Former Sergeant Justice is now employed as a Special Agent with the FBI. (ECF No. 17-6).

## I.      BACKGROUND

On March 29, 2019, Judge Hollander issued a Memorandum Opinion (ECF No. 34) and

Order (ECF No. 35) ruling on various pending motions.  The Court reiterates Judge Hollander's

recitation of the pertinent factual background:

### A.  Plaintiff's Complaint

In his unsworn Complaint, plaintiff states that an individual named David
Spratt identified him in a photo array conducted by law enforcement as part of an
investigation into the January 27, 2015 burglary of Cooper's Market in Elkton,
Maryland.  ECF 1 at 5.  On January 30, 2015, defendants, who were employees of
the Maryland State Police, had information that "Plaintiff was operating a yellow
Ford Mustang, Maryland Registration IAK6308."  *Id.*  At some point, defendants
observed plaintiff driving the Mustang and pursued him.  *Id.*

Plaintiff states that after "the pursuit was ended . . . Plaintiff surrendered,
and complied with all orders of defendants, i.e. (hand in the air, etc.), yet at this
time defendants collectively and violently yanked this passive Plaintiff from the
vehicle."  *Id.* at 6.   After plaintiff was "forcibly and violently thrown to the
pavement" and handcuffed, defendants pressed plaintiff to the ground "while others
kicked, stomped Plaintiff in his face, head, back and other areas," despite plaintiff
being "securely restrained" at the time and posing no threat of physical harm to
defendants.  *Id.*  According to plaintiff, while he was handcuffed, defendants and
other law enforcement officers who were present collectively "beat Plaintiff's ribs
and stomach areas", "unnecessarily used Tasers on Plaintiff . . . until Plaintiff layed
[sic] motionless on the pavement, while blood ran down his face", "beat Plaintiff
with batons", and physically assaulted plaintiff with their hands and feet.  *Id.* at 6–
7.  Plaintiff reports that, as a consequence of this attack, he experienced

massive swelling to the left and right sides of his head, face, a broken
nose, 2 swollen and closed black eyes, blood spotting in the whites
of both eyes, a severed left ear lobe, busted lips, broken tooth, cuts,
lacerations, and abrasions and avulsions, . . . stressed tension to the
back of the neck, bruised body and back areas, and extreme pain and
discomfort; . . . long term migraine headaches, neck and shoulder
pain, inability to perform and complete short and long term
noncomplicated tasks, suffers loss of memory, and has difficulty
sleeping.

*Id.*

Although the Complaint does not attribute particular acts to any individual defendant, plaintiff subsequently filed an unsworn Motion to Amend (ECF 21), in which he states that, after his car came to a stop,

> Plaintiff raised both hands, and Sgt Justice came back and pulled my hands behind the back and cuffed me, then Sgt. Justice pulled me out of the car and Justice and Cpl Harris (who helped Justice handcuffed [sic] Plaintiff) [sic]; . . . After Justice and Harris handcuffed Plaintiff, Justice began kicking Plaintiff on the right side, and Harris began kicking Plaintiff on the left side of the face; . . . Tfc. Cox beat Plaintiff with his stick, striking Plaintiff in the face, shoulder, and on the right side of the body."

*Id.* at 2. The Motion also attributes specific acts to particular officers who are not defendants. *Id.* at 3.

Plaintiff claims defendants' vicious use of force was excessive, "completely out of proportion to any legitimate needs," and employed with malicious and sadistic intent. *Id.* at 7. In particular, he believes that defendants conspired to physically assault him "in retaliation for an unrelated hit and run that involved unrelated events, and involving an unrelated law enforcement Officer MSP Trooper Spinner." *Id.* In support of this assertion, plaintiff reports that "MSP Troopers"[2] made post-attack statements such as "we got him for Spinner." *Id.*

## B. Defendants' Motion & Exhibits

Defendants' Motion (ECF 17) is supported by an affidavit from each of the three defendants. ECF 17-4; ECF 17-5; ECF 17-6. Defendants' version of event differs significantly from the allegations in Graham's Complaint.

Each defendant avers that he was assigned to assist with the pursuit of plaintiff's vehicle after other law enforcement officers (who were not named as defendants) initiated the pursuit[.] ECF 17-4 at 2; ECF 17-5 at 2; ECF 17-6 at 2. Defendants believed that plaintiff "was wanted for several felony warrants" and were "informed that [plaintiff] always carries a handgun." *Id.* Plaintiff drove at high speeds and continued even after "his tires were punctured with stop sticks." ECF 17-4 at 3. Ultimately, the pursuit ended after plaintiff's car was boxed in by law enforcement vehicles and brought to a complete stop when plaintiff "us[ed] his vehicle to ram the rear of the vehicle [defendant Cox] was riding in at the time." *Id.* Cox, Harris, and Justice were all in the same vehicle, which Justice was driving. ECF 17-4 at 3.

After the passengers in plaintiff's car were moved to safety, Cox, who possessed a "duty weapon," "positioned [him]self by Graham. Graham had refused to exit the vehicle, and was on the ground at that point." *Id.* at 3–4. The three defendants and

---

[2] Plaintiff does not specify whether the defendants are the "MSP Troopers" who made these comments.

other officers "gave Graham verbal commands to put his hands behind his back for handcuffs.  Graham failed to comply and actively resisted handcuffs by struggling to put his hands in his front waistband."  ECF 17-4 at 4; ECF 17- 5 at 3; ECF 17-6 at 3.

Cox avers, ECF 17-4 at 4:

> A Cecil County Sheriff's Office deputy attempt[ed] to deploy a tazer, but it had no effect on Graham.  Graham then grabbed for the deputy's tazer. . . .  Due to Graham's active resistance and the concern that Graham was armed, [Cox] used [his] Monadnock Expandable Baton (MEB), attempting to jab [Graham's] right shoulder to prevent him reaching for his waistband.  Graham's movements deflected this strike from his shoulder to his cheek.  The blow did not seem to have any effect on Graham. [Cox] attempted strikes with [his] leg in Graham's shoulder/upper arm area.

Thereafter, the officers present were able to place Graham in handcuffs.  *Id.*  According to Cox, "Graham appeared to be on drugs at the time of his arrest" and was provided with "immediate medical attention" by a Maryland State Police medic before EMS arrived.  *Id.* at 5.

Each of the three defendants avers that he did not possess a taser during the incident, nor did he (or any of the officers that he observed) use force after Graham was handcuffed.  ECF 17-4 at 4; ECF 17-5 at 3; ECF 17-6 at 3.  Further, each avers that "[t]he force employed was limited to what was necessary to apprehend and handcuff Graham."  *Id.*

In addition to this factual background, after Judge Hollander granted Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, Plaintiff filed a Motion to Re-Open (ECF No. 43) supported by a signed declaration.  Plaintiff's declaration disputes Defendants' version of events.  (ECF No. 43-1).  Notably, Plaintiff avers that Defendants hit and kicked him after he was handcuffed and laying on the ground, (ECF No. 43-1 at 2), while Defendants aver that they did not touch plaintiff after he was handcuffed.

As it pertains to the instant motion to compel, Defendants took Plaintiff's deposition on January 27, 2021.  (ECF No. 74-3).  A review of Plaintiff's deposition indicates more than twenty

instances in which Plaintiff invoked his Fifth Amendment right and declined to answer the question put to him.  Those questions include:

- "What are [the] last names [of people with whom you reside]?"  (ECF No. 74-3 at 13–14).

- "[A]re you up to date on your child support obligations?"  (ECF No. 74-3 at 17–18).

- "Have you ever been affiliated -- and I understand you were incarcerated -- with any gangs?"  (ECF No. 74-3 at 20–21).

- "Have you sought employment in the last 20 years?"  (ECF No. 74-3 at 26).

- "Are you honest about your income when you applied for [governmental benefit] programs?"  (ECF No. 74-3 at 26–27).

- "Do you now or have you in the past abused drugs?"  (ECF No. 74-3 at 34–35).

- [H]ad you ever run from the police prior to that 2005 or '06 incident and after that 2005, '06 incident?"  (ECF No. 74-3 at 40).

- "Did you ever sell any of the cigarettes?"  (ECF No. 74-3 at 61).

- "What drugs were you using the week of January 27 to January 30, 2015?  (ECF No. 74-3 at 61).

- "I suppose if I ask you if you fled from the police on January 30, 2015, you're going to invoke your fifth amendment right again?"  (ECF No. 74-3 at 62).

- "If I ask you any questions about the events of January 30, 2015, are you going to be invoking your fifth amendment right?"  (ECF No. 74-3 at 62).

- "Were you using any drugs?"  (ECF No. 74-3 at 64–65).

- "Were you driving a vehicle?"  (ECF No. 74-3 at 65).

- "Can you describe what if anything out of the ordinary happened when you were at Maurice's house in the morning of the 30th?"  (ECF No. 74-3 at 67–68).

- "And did you at that time belong to any gangs?"  (ECF No. 74-3 at 68).

- "Did you encounter the police that morning at 9 Bratton Road?"  (ECF No. 74-3 at 69).

- "After you encountered the police, if you did, where did you spend the afternoon?"  (ECF No. 74-3 at 69).

- "[D]id you go to Hollingsworth Manor on that day?"  (ECF No. 74-3 at 69).

- "What kind of car was it [that you were in at 8:00 p.m. on January 30, 2015]?"  (ECF No. 74-3 at 70).

- "Whose car was it?"  (ECF No. 74-3 at 72).

- "Did the police attempt to conduct a traffic stop?"  (ECF No. 74-3 at 72).

## II.    DISCUSSION

The Fifth Amendment to the United States Constitution "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1976) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)).  The Fifth Amendment, however, does not permit a § 1983 Plaintiff to invoke his right both "as a shield to oppose depositions," *In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991), and as a sword "to gain an unequal advantage against the party he has chosen to sue."  *Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084, 1087 (5th Cir. 1979).

Where a § 1983 Plaintiff invokes his or her Fifth Amendment right against self-incrimination in the response to a question posed in a civil deposition—and Defendant moves to compel Plaintiff's response, or for summary judgment—district courts apply a four-factored balancing test to determine:

> (1) the validity of the plaintiff's assertion of his Fifth Amendment privilege;
> (2) the costs to the plaintiff associated with compelling him to answer the deposition questions at issue;

6

(3) the extent to which upholding his assertion would thwart discovery of issues at the heart of plaintiff's lawsuit; and
(4) whether and how easily the defendants could obtain the information sought from other sources.

*Swann v. City of Richmond*, 462 F. Supp. 2d 709, 713 (E.D. Va 2006); *see also Deakins v. Pack*, 957 F. Supp. 2d 703, 749 (S.D. W. Va. 2013) ("[A] balancing approach is necessary in cases where a party to a civil action asserts her Fifth Amendment privilege and refuses to answer deposition questions."); *Varner v. Roane*, Civ. No. 5:17-cv-00080, 2018 WL 3244108 (W.D. Va. July 3, 2018) (considering *Swann* factors to fashion evidentiary remedy for Plaintiff's invocation of Fifth Amendment right during his deposition). This Court applied the *Swann* factors in *Brockington v. Boykins*, to determine if the § 1983 Plaintiff's Fifth Amendment invocation would stand, or if a sanction was appropriate. Civ. No. CCB–08–1713, 2013 WL 1326274, at *7 (D. Md. March 29, 2013). What is clear from *Swann*, *Brockington*, and similar cases that followed, is that this balancing test, which considers the specific facts and circumstances attendant to each question posed to Plaintiff, drives the analysis.

In *Brockington*, the § 1983 Plaintiff "refused to answer a question [during his deposition] about what his criminal co-defendant, Tyrone Gross, was retrieving from Brockington's trunk during their encounter with [Defendant] Boykin." Civ. No. CCB–08–1713, 2013 WL 1326274, at *7 (D. Md. March 29, 2013). Defendants filed a motion to compel and motion for summary judgment, in which Defendants, *inter alia*, argued that Plaintiff's invocation warranted judgment as a matter of law. *Id.* at 7–8; 8 n.6. The Court noted that "Brockington's refusal to answer a question about the circumstances of his encounter with Boykin would unfairly prejudice the defendants," before finding that each of the above factors "weigh[ed] against Brockington's invocation of the privilege." *Id.*

In sum, the *Brockington* Court determined that: (1) Brockington already extensively testified about the events at issue, and Brockington had already been convicted or acquitted of offenses stemming from the questioned events; (2) given the narrow scope of the question posed, Brockington's "cost" of answering it was low; (3) the question appeared directly relevant to Plaintiff's version of events (and, the case revolved around the credibility of the parties' conflicting testimony, making the question significant); and (4) because Brockington's testimony was one of few sources of information about the events at issue, and co-defendant Gross would have a Fifth Amendment right were the issue posed to him, Boykins could not obtain the information from another source. *Id.* Therefore, the Court concluded that "Brockington must answer the defendants' question if he wishe[d] to continue to pursue his claims without incurring a sanction." *Id.*

Here, the parties' briefing does not analyze Plaintiff's invocations in light of the *Swann* factors. However, as applied in this case, each of these factors weighs against Plaintiff's invocation of the privilege. First, the validity of Plaintiff's invocations is weak. A § 1983 Plaintiff's mere invocation of his Fifth Amendment right will not always prohibit questioning. *See Hoffman v. United States,* 341 U.S. 479, 486 (1951) ("The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination."). Instead, "[a] valid assertion of the [Fifth Amendment] privilege requires only the existence of a plausible possibility that the person might be prosecuted in this country." *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 F. Supp. 2d 628, 633 (E.D. Va. 2006). Yet here, Plaintiff already entered a plea of guilty to charges of Reckless Endangerment, Possession of a Controlled Dangerous Substance, and Fleeing and Eluding Police, all of which stemmed from the same events underlying this action. (ECF No. 17-3 at 5). Therefore, double jeopardy principles protect Plaintiff from even the possibility of subsequent prosecution on

these same offenses.  *See* U.S. CONST. Amend. V ("[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb.").

Factor two requires the Court to consider the "cost" associated with compelling Plaintiff to answer the deposition questions at issue.  Here, the questions put to Plaintiff fall into two categories.  Certain questions, such as "[w]hat are their last names," do not threaten to expose Plaintiff to criminal liability.  The "cost" to Plaintiff associated with answering such questions is low.  The other category of questions, such as "[w]ere you driving a vehicle," come closer to exposing Plaintiff to criminal liability.  However, as noted above, given that Plaintiff has entered a plea of guilty to Reckless Endangerment, Possession of a Controlled Dangerous Substance, and Fleeing and Eluding Police—all of which stemmed from the events underlying the instant action—negate the possibility of future prosecution.  As such, the "cost" to Plaintiff associated with answering these questions is also low.

As to the third factor, upholding Plaintiff's assertions of privilege to several questions would thwart discovery of issues at the heart of Plaintiff's lawsuit.  For example, questions such as "[d]id you encounter the police that morning at 9 Bratton Road," and "[d]id the police attempt to conduct a traffic stop," strike directly at Plaintiff's version of the underlying events.  On this point, the parties present conflicting testimony about the events in question.  Plaintiff contends that Defendants continued to strike him after placing him in handcuffs, while Defendants deny applying force after that point in time.  Where the credibility of the parties' accounts is clearly in issue, this factors weights against sustaining Plaintiff's Fifth Amendment invocation.  *See Brockington*, Civ. No. CCB–08–1713, 2013 WL 1326274, at *7 (D. Md. March 29, 2013) ("Given that the central dispute of material fact in this case revolves around the credibility of Brockington's and Boykin's conflicting testimony about that night, the question is significant.").  Plaintiff also

contends that he "has engaged in significant discovery with [Defendants]. [Plaintiff] answered interrogatories and provided more than one hundred pages of documents in response to document requests." (ECF No. 80 at 11). However, from these bald assertions, the Court is unable to determine whether the discovery that Plaintiff has exchanged with Defendants satisfactorily covers the issues about which Defendants attempted to inquire into during Plaintiff's deposition.

Finally, turning to the fourth factor, Plaintiff's testimony is one of very few sources of information available. To the extent that other witnesses—i.e., Plaintiff's passengers—could testify about the events at issue, they were "moved to safety" during the altercation. ECF No. 17-4 at 3. This seemingly impaired their ability to directly observe Plaintiff's interaction with Defendants, as neither side has cited them as witnesses to the events at issue. Additionally, as in *Brockington*, the passengers may well assert their own Fifth Amendment rights if deposed. While Plaintiff may not be the *only* source of information, he is the best source of information for his own perspective. Defendants are entitled to gather facts relevant to the events at issue from Plaintiff's view for purposes of corroborating, or contradicting, Defendants' theory. Accordingly, this factor weighs in favor of Defendants' motion to compel.

In determining the appropriate sanction, if any, in cases where a § 1983 Plaintiff has invoked his or her Fifth Amendment right in response to deposition questions, "a court may not impose a sanction on a litigant that would make an assertion of his Fifth Amendment privilege 'costly.'" *Swann*, 462 F. Supp. 2d at 712 (quoting *Griffin v. California*, 380 U.S. 609, 614 (1965)). "The type of 'cost' condemned by the Supreme Court includes (1) forcing of a party to choose between the Fifth Amendment privilege or dropping her lawsuit, or (2) requiring the party to continuing with her lawsuit and exposing herself to criminal liability." *Deakins v. Pack*, 957 F. Supp. 2d at 766–67 (citing *Griffin*, 380 U.S. at 614).

While outright dismissal is generally disfavored, there exist circumstances where it is an appropriate sanction.  *See e.g.*, *Varner*, Civ. No. 5:17-cv-00080, 2018 WL 3244108 at *4 (W.D. Va. July 3, 2018) (noting that involuntary dismissal is an "extreme sanction"); *Wehling*, 608 F.2d at 1088 ("When plaintiff's silence is constitutionally guaranteed, dismissal is appropriate only where other, less burdensome, remedies would be ineffective means of preventing unfairness to defendant."); *Serafino v. Hasbro, Inc.*, 82 F.3d 515, 518 n.5 (1st Cir. 1996) ("Though dismissal has rarely been imposed or affirmed, a number of courts have acknowledged the court's power to dismiss even in the face of a party's proper assertion of the [Fifth Amendment] privilege.")).  Here, Defendants suggest that dismissal is the only appropriate remedy.  (ECF No. 74-1 at 8) ("[Plaintiff] has chosen not to answer questions.  The only alternative is to dismiss his case.").  Plaintiff argues dismissal is too harsh a sanction; instead, he offers to sit for a second deposition (ECF No. 80 at 10), or, alternatively, urges the Court to consider a less drastic sanction such as an adverse inference (ECF No. 80 at 16).

To Plaintiff's point, less extreme remedies do exist.  For example, where a litigant "successfully invokes the Fifth Amendment to refuse to answer, the other parties may be able to use that assertion of privilege later."  *Vales v. Preciado*, Civ. No. DKC 2005-3110, 2007 WL 9782569 at *3 (D. Md. April 13, 2007).  Nothing in the Fifth Amendment "forbid[s] adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them."  *Baxter*, 425 U.S. at 318.  Another court "fashion[ed] an appropriate remedy . . . to level the evidentiary playing field" by precluding a § 1983 Plaintiff's testimony through affidavit on summary judgment or testimony at trial.  *Varner*, Civ. No. 5:17-cv-00080, 2018 WL 3244108 at *1; 5 (W.D. Va. July 3, 2018).  These remedies make clear that a "plaintiff who retreats under the cloak of the Fifth Amendment cannot hope to gain an unequal

advantage against the party he [or she] has chosen to sue.  To hold otherwise would, in terms of the customary metaphor, enable plaintiff to use his [or her] Fifth Amendment shield as a sword." *Wehling*, 608 F.2d at 1087.

Accordingly, on balance of the *Swann* factors and Plaintiff's lack of warning that his case may suffer adverse consequences, this Court concludes that sanctions—particularly dismissal—at this juncture, are not warranted.  Defendants are not yet entitled to sanctions based on Plaintiff's invocation of his Fifth Amendment privilege.  Invocation of the Fifth Amendment privilege, however, "does not come without consequences," *Varner*, Civ. No. 5:17-cv-00080, 2018 WL 3244108 at *4 (W.D. Va. July 3, 2018) (quoting *Deakins*, 957 F. Supp. 2d at 740), and Plaintiff "must answer [Defendants'] question[s] if he wishes to continue to pursue his claims without incurring a sanction."  *Brockington*, Civ. No. CCB–08–1713, 2013 WL 1326274, at *7 (D. Md. March 29, 2013).  As such, the Court makes a similar advisement as that which appears in *Brockington*: Plaintiff is ordered to sit for a second deposition, and if Plaintiff continues to refuse to answer deposition questions, Defendants will have grounds to seek a remedy from the court and Plaintiff should consider himself so warned.  Civ. No. CCB–08–1713, 2013 WL 1326274, at *8 (D. Md. March 29, 2013).

In light of the Court's decision, this Court's Stay (ECF No. 79) is lifted, and the following schedule shall govern:

| Event | Deadline |
|---|---|
| Discovery deadline; submission of status report | July 30, 2021 |
| Requests for admission | August 13, 2021 |
| Dispositive pretrial motions deadline | August 30, 2021 |

The parties may, if desired, request a modification of this schedule within fourteen days of the issuance of this opinion.

## III.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel, or in the Alternative, Motion to Dismiss (ECF No. 74) is **DENIED without prejudice**.

A separate order will follow.

Date: June 1, 2021                              _____/s/_____
                                                J. Mark Coulson
                                                United States Magistrate Judge